

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. 0-6241
Re: Whether policies of re-insurance
will qualify for a substantial
number of the "bona fide appli-
cations for insurance" on the
required separate risks under
paragraph (a) of Article 4860a-7,
Revised Civil Statutes, and re-
lated questions.

In your letter of September 19, 1944, requesting
an opinion of this department, you present the following three
questions:

"(1)  Under Section (a) of said Article
4860a-7 will policies of reinsurance qualify for
a substantial number of the 'bona fide applica-
tions for insurance' on the required 300 separate
risks?  The policies of reinsurance will represent
insurance on risks originally written in a Lloyds,
and the Underwriters of the Lloyds will apply to
the Mutual Insurance Company for reinsurance on
each separate policy involved, and there will be
no contract between the Mutual Insurance Company
and the policyholder of the Lloyds.  Stated con-
versely, this question is:  must these 'bona fide
applications' be for direct insurance in the form
of a contract with the original policyholder?

Hon. O. P. Lockhart, Page 2

"(2)  Under Section (d) of said Article
4860a-7, must the 'premium' collected in advance
represent an annual premium, or may it represent
something less than an annual premium?  In this
connection, the General Rules of Texas Automobile
Casualty Manual promulgated by the Board provide
for paying premiums in monthly installments, and
the first payment must be at least 16 2/3 per cent
of the estimated total annual premium, and provide
under certain conditions for writing a policy on
a six months basis in which case the premium shall
be 55% of an annual premium.  Would one installment
in the first case or the premium for the six months
policy in the second case qualify as a 'premium'
under this section?

"(3)  The General Mutual Insurance Company
proposes to write both fire and casualty insurance.
Under Section (d) of said Article 4860a-7, what
amount of 'cash and invested assets' or surplus
must it have to be licensed and continue in busi-
ness, fifty thousand dollars or seventy thousand
dollars?"

Article 4860a-7, Revised Civil Statutes, to which
your questions relate provides:

"No company organized under this Act shall
issue policies or transact any business of insur-
ance unless it shall comply with the conditions
following, or until the Board has, by formal li-
cense authorized it to do so, which license he
shall not issue until the corporation has complied
with the following conditions:

"(a)  It shall hold bona fide applications
for insurance upon which it shall issue simultan-
eously, or it shall have in force, at least twenty
policies to at least twenty members for the same
kind of insurance upon not less than three hundred
separate risks each within the maximum single risk
described herein;

Hon. O. P. Lockhart, Page 3

"(b) The 'maximum single risk' shall not exceed twenty per cent of the admitted assets, or three times the average risk or one per cent of the insurance in force, whichever is the greater, and reinsurance taking effect simultaneously with the policy being deducted in determining such maximum single risk;

"(c) For the purpose of transacting workmen's compensation insurance such company shall have applications from at least fifty employers for insurance on which policies are to be issued covering not less than two thousand employees, each such employee being considered a separate risk; and the provisions with regard to maximum single risk shall not apply;

"(d) It shall have collected a premium in advance upon each application the total of which premium shall be held in cash or securities in which stock fire and casualty insurance companies are under the Texas law authorized to invest. It shall have and at all times maintain cash and invested assets of not less than fifty thousand dollars, if it be a casualty insurance company and not less than twenty thousand dollars if it shall be other than casualty insurance company. If at any time the company shall have assets or surplus in less amount than is required for the insurance of policies and the transaction of business upon organization, the company shall cease writing new business and shall immediately report such condition to the Board of Insurance Commissioners, which may in its discretion order a reinsurance of the outstanding liabilities of the company in some other company transacting business in this State or proceed to a liquidation of the same."

The above article sets forth certain conditions which must be fulfilled by a mutual insurance company being organized under Chapter 9, Title 78 of said Statutes before being licensed by the Board of Insurance Commissioners to write insurance. With the exception of compensation risks, provided for in Paragraph (c),

Hon. O. P. Lockhart, Page 4

such company shall issue simultaneously, or have in force, at least twenty policies to at least twenty members for the same kind of insurance upon not less than the defined number of three hundred separate risks. These must be based upon bona fide applications for such insurance. We find no provision or language in the law authorizing the Board of Insurance Commissioners to accept under this Article applications for re-insurance contracts in lieu of applications for policies of insurance simultaneously issued or in force.

The legal authorities recognize a distinction between insurance and re-insurance. The word "insurance" is a broad term with comprehensive and varying meaning and we are mindful of the fact that when it is used without qualifying words it may and often does signify indemnity only, but it is often used to signify that insurance written by "casualty" companies, (Art. 4989, R. C. S.) and extends to any casualty or insurance risk which may lawfully be made the subject of insurance. Southwest National Bank v. Employers' Indemnity Corp., et al., 12 S. W. (2d) 189, par. 3, 4.

We quote from Words and Phrases, Vol. 36, Permanent Edition, P. 754:

"An application for insurance is the representations which a party makes of his property when he applies for insurance. Cowan v. Phoenix Ins. Co. 20 Pac. 408, 78 Cal. 181."

It has also been held that "re-insurance" contract is not one of insurance, but simply of indemnity, a contract that one insurer makes with another to protect the first insurer from a risk it has already assumed. Union Central Life Ins. Co. v. Lowe, 182 N. E. 611, Words and Phrases, Permanent Edition, Vol. 36, P. 733.

The common acceptation of the term "re-insurance" is to assume the obligations imposed by a policy of insurance. California State Life Ins. Co. v. Kring, 208 S. W. 372. The meaning of "re-insurance" as taken from the Supreme Court of Michigan in People v. American Central Ins. Co. 146 N. W. 235, 237, adopted in this jurisdiction together with the Legislature's use of the word in various statutes strongly supports the view that while both are commonly referred to as contracts or policies of insurance, "re-insurance" is to be distinguished from "insurance", and not necessarily included within the term as shown by the opinion in the above case from which we quote:

> "The term 'reinsurance' has two meanings.
> When a fire insurance company, with the consent
> of the insured, is substituted for another fire
> insurance company, so that the insured releases
> the original insurer and looks to the substituted
> company alone, reinsurance has been effected. A
> company desiring to cease doing business entirely,
> or in a particular state, may thus reinsure its
> risks. Usually the term is used with another
> meaning, which is that one fire insurance company
> indemnifies another on account of risks which the
> indemnified company is carrying and continues to
> carry. In such a case, the insured looks only to
> the company which issues its policy to him. A
> company may thus reinsure its risks, in whole or
> in part, by contract with the reinsuring company,
> and, with respect to the indemnity so secured, no
> new policies be written or issued. The company
> issuing the policy collects the premium from the
> insured. It pays the reinsuring company for its
> promise of indemnity, . . ." Morrow v. Burlington
> Basket Co. 66 S. W. (2d) 746, Par. 1, 2.

We have particularly noted that Article 4860a-16 authorizes such mutual insurance companies organized or admitted to transact insurance in this State to, by policy, treaty or other agreement, cede to or accept from any insurer reinsurance upon the whole of any part of any risk. Since Article 4860a-7, supra, however, prescribes the conditions upon which such organized company may be issued a permit, had it been intended that applications for reinsurance could be accepted upon organization, we think the Legislature would have included the term "reinsurance" or explicitly authorized same under this section. Furthermore, in prescribing the conditions wherein it defined "maximum single risk", that "reinsurance shall be deducted" as provided in Paragraph (b) and noting the last sentence in Paragraph (d), it is apparent that the Legislature had the subject of reinsurance specifically before it.

Proceeding now to discuss your second question, the word "premium" used in Paragraph (d) of said Article, required to be collected in advance, insofar as we can find, carries no special signification other than being the legal consideration for assuming and carrying the risk. The amount of premium to

Hon. O. P. Lockhart, Page 6

be collected depends upon the application and contract as authorized to be written under the law and valid regulations of the Board. We are not at liberty to read into this statute the word "annual" premium. It is commonly understood and recognized that insurance policies are written to cover certain casualty and fire risks for periods less than twelve months, dependent upon the agreement of the parties to the contract.

As to your third question, the Statute provides that such company "shall have and at all times maintain cash and invested assets of not less than Fifty Thousand Dollars, if it be a casualty insurance company and not less than Twenty Thousand Dollars if it shall be other than casualty insurance company." In the next sentence "assets or surplus" apparently refers to such cash and invested assets aforementioned by providing that if at any time the company shall have "assets or surplus" in less amount than is required, the company shall cease writing new business and shall immediately report such condition to the Board of Insurance Commissioners.

Any company organized under the provisions of the Act is empowered and authorized to write any kinds of insurance which may be lawfully written in Texas, life and fidelity and surety bonds excepted. Construing Article 4860a-7 in its entirety, we believe the Legislature's intent is sufficiently disclosed to make the requirement of not less than Fifty Thousand Dollars to apply if such company writes casualty insurance and to require not less than Twenty Thousand Dollars for writing all other kinds of insurance other than casualty. This construction is not inconsistent with the other provisions of the Statute and is consistent generally with the requirements prescribed by the Legislature for companies organized under other chapters and permitted to write more than one kind of insurance in regard to maintaining additional surplus or capital stock for each kind of insurance business written. Articles 4993, 5017 and 5026, Vernon's Annotated Civil Statutes.

Answering your questions in the order presented, it is therefore the opinion of this department:

1. The phrase "bona fide applications for insurance" as used in paragraph (a) Article 4860a-7, Vernon's Annotated Civil Statutes and required to be held upon organization, does not include re-insurance policies or contracts although such re-insurance is permitted to be contracted for under Article 4860a-16, V. A. C. S. after organization is completed.

2.  The term "premium" as used in Paragraph (d) of said statute, which provides for the collection of a premium in advance, does not necessarily mean an annual premium. The premium for a policy based upon a bona fide application to be written on a six months basis and within valid regulation of the Board, will meet the requirement of the statute.

3.  Before a mutual insurance company on organization under Chapter 9, Title 78, V. A. C. S. may be issued a permit to write both fire and casualty insurance, it must have a surplus in cash or invested assets of not less than Seventy Thousand Dollars.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Wm. J. R. King
Assistant

WK:fo

APPROVED OCT 23 1944

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN